**John DAVIS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–94–00229–CR.

Court of Appeals of Texas,
Texarkana.

July 27, 1995.

Discretionary Review Refused Nov. 8, 1995.

Jeff Fletcher, Texarkana, Earl R. Waddell, III, Fort Worth, for appellant.

Bobby Lockhart, Dist. Atty., Texarkana, Michael Shepherd, Asst. Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

John Davis, Jr. appeals his conviction for possession of a controlled substance, cocaine, in an amount less than twenty-eight grams. On appeal, Davis complains of the denial of his motion for a court-appointed expert witness; the admission of evidence allegedly seized in violation of his constitutional rights; error in the charge to the jury; and the punishment assessed by the jury. We find no reversible error and affirm.

At approximately 9:00 p.m. on the night of January 22, 1993, officers McCarver and Gladden of the Texarkana Police Department were patrolling in an unmarked car in a residential area of Texarkana, Texas. McCarver noticed two men standing in the front yard of a residence and recognized Davis as one of the men. The officers drove past the residence, turned the next corner, and drove around the block to return to the residence. McCarver testified that, as the patrol car pulled up to the residence, Davis waved and approached the car. McCarver rolled down his window. Davis immediately recognized McCarver and turned to walk toward the residence. McCarver ordered Davis to stop, but Davis did not obey the order.

Gladden and McCarver got out of the patrol car and followed Davis to the front porch of the residence. Davis reached the front door of the residence, and McCarver again ordered him to stop. Davis turned and spoke to McCarver. As Davis spoke, McCarver saw a clear cellophane baggie in his mouth, but could not see the contents of the baggie. McCarver grabbed Davis in a "bear hug." As the struggle continued, Sergeant McElhaney, a backup officer, arrived and sprayed Davis with mace.

McCarver had pinned Davis's arms to his sides. Davis lifted one hand slightly, spit the baggie into his left hand, and threw it toward the front door. Gladden seized the baggie. After Davis was subdued and handcuffed, McCarver inspected the baggie and observed that it contained a white rock-like substance, identified as 2.51 grams of cocaine in a subsequent chemical analysis.

A jury convicted Davis of possession of a controlled substance and sentenced him to ninety-nine years' confinement.

## COURT–APPOINTED EXPERT

■ Davis complains of the trial court's denial of his motion for a court-appointed expert to analyze the outside surface of the baggie for traces of saliva. *See* TEX.CODE CRIM.PROC.ANN. art. 26.05(a) (Vernon 1989) (providing for payment for expert defense witnesses). Fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversarial system. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Implementation of this principle requires that a defendant be provided with the basic tools of an adequate defense or appeal. *Id.* In deciding whether, and under what conditions, an expert's participation is important enough to require the state to provide an indigent defendant with access to competent expert assistance, three factors are relevant considerations: (1) the private interest that will be affected by the action of the state, (2) the governmental interest that will be affected if the safeguard is to be provided, and (3) the probable value of the additional or substitute procedural safeguards that are sought and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Id.* at 77, 105 S.Ct. at 1093; *Rey v. State,* 897 S.W.2d 333, 337 (Tex.Crim. App.1995).

■ The necessity for the appointment depends on whether the defendant has made a sufficient threshold showing of need for the expertise in his particular case. *Rey,* 897 S.W.2d at 339. This includes showing both that there exists a reasonable probability that an expert would be of assistance and that denial of expert assistance would result in a fundamentally unfair trial. *Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). If a defendant makes a sufficient showing that he is entitled to expert assistance in the evaluation, preparation, and presentation of his defense, the trial court's denial of the motion for appointment of an expert amounts to structural error

affecting the underpinnings of the entire trial, which cannot be evaluated for harm and calls for automatic reversal. *Rey,* 897 S.W.2d at 345–46.

The first factor articulated in *Ake* favors Davis's position. The private interest in the accuracy of a criminal proceeding is compelling and weighs heavily in the analysis. *Ake,* 470 U.S. at 78, 105 S.Ct. at 1093.

As for the state or governmental interest, the Supreme Court has interpreted this narrowly and as a matter of economy only. *Id.* at 79, 105 S.Ct. at 1094. The Supreme Court gave this second factor little weight in light of the state's interest in obtaining an accurate result in a criminal proceeding. *Id.* at 79, 105 S.Ct. at 1094.

■ It is the third factor to which the Supreme Court devoted its analysis and to which Davis devotes his argument. This third factor requires a preliminary showing by the defendant that the issue for which he seeks expert assistance is likely to be a significant factor at trial. *See id.* at 83, 105 S.Ct. at 1096; *Rey,* 897 S.W.2d at 339. The government is not required to automatically provide indigent defendants with expert assistance upon demand. *Yohey v. Collins,* 985 F.2d 222, 227 (5th Cir.1993). In those cases where an insufficient showing has been made, the defendant typically has failed to support his motion with affidavits or other evidence in support of his defensive theory, an explanation as to what his defensive theory was and why expert assistance would be helpful in establishing that theory, or a showing that there is reason to question the state's expert and proof. *Rey,* 897 S.W.2d at 341. Offering little more than undeveloped assertions that the requested assistance would be beneficial will not suffice. *Id.* at 339.

■ Davis wanted a forensic pathology laboratory in Dallas to test the baggie to determine if it had been in his mouth. The State maintained that the requested testing would not affect any ultimate issue in the case because it is the possession of the contraband, which McCarver saw Davis throw onto the porch, that is the determinative issue.

There is no evidence, in the form of affidavits or sworn testimony, about the capabilities of the testing facility or the potential results that could be obtained from analyzing the baggie to establish that the requested appointment of an expert could support Davis's defensive theory. Defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case. *Moore*, 809 F.2d at 712. Davis has not made a sufficient showing that the requested expert assistance was essential to the development of his defensive theory.[1] The trial court did not err in denying the motion for appointment of an expert witness.

### MOTION TO SUPPRESS

Davis contends that the trial court erred in overruling his motion to suppress and in admitting evidence seized in violation of his rights under the federal and state constitutions and the Code of Criminal Procedure. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM.PROC.ANN. art. 1.06 (Vernon 1977), art. 38.23 (Vernon Supp.1995). The trial court denied the motion to suppress after finding that there were material fact issues that should be submitted to the jury. Davis has raised his complaints under both the federal and state constitutions and, therefore, this court analyzes his complaints separately. *See Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Crim.App.1991). Nonetheless, Davis cites no authority that would require this court to take a markedly different approach in analyzing his complaints under the Texas Constitution than that required by the Fourth Amendment.

■ At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991). The appellate court does not engage in its own factual review, but considers only whether the trial court improperly applied the law to the facts. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Absent an abuse of discretion by the trial court, the appellate court will not disturb the trial court's findings. *Cantu*, 817 S.W.2d at 77.

Davis has divided his argument into three parts: (1) the lack of reasonable suspicion to support a temporary detention; (2) the warrantless entry upon his curtilage; and (3) his warrantless arrest. Each of his arguments will be addressed in turn.

#### A. Temporary Detention

Davis argues that the officers lacked the reasonable suspicion necessary to support a temporary detention under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He asserts that he attempted to swallow the baggie as a direct result of the officers' unlawful conduct. In addressing this issue, we first determine when the detention began and then determine whether the officers possessed a reasonable suspicion of criminal activity. *See White v. State*, 852 S.W.2d 53, 55 (Tex.App.—Texarkana 1993, no pet.).

Davis contends that his detention began when McCarver ordered him to stop. For purposes of the Fourth Amendment, a person is seized if he submits to a show of authority or has been restrained by means of physical force. *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The court of criminal appeals has recently determined that a person is not seized for purposes of Article I, Section 9 until such time as the person reasonably believes he is not free to leave and either yields to a show of authority or has been physically stopped or restrained by a law enforcement officer. *Johnson v. State*, No. 1340–93, 1995 WL 379880 (Tex.Crim.App. June 28, 1995) (pending on rehearing).

■ Davis did not submit to the order to stop; instead, he turned and walked away from the car and from the officers. The earliest point in time at which it could be said

---

1. Compare the present case with the facts in *Rey*, where the defendant relied upon an affidavit supplied by the pathologist the defendant sought to have appointed to his case. Assertions in the affidavit cast doubt on the reliability of the pathology report prepared by the state's expert. *Rey v. State*, 897 S.W.2d 333, 340–41 (Tex.Crim. App.1995).

Davis was detained was when he turned around on his front porch and faced the officers.

■ Regardless of when a detention begins, not all temporary detentions are objectionable. A law enforcement officer may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880. A stop is justified if founded upon specific, articulable facts which, in light of the officer's experience and personal knowledge, objectively support a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *Id.; Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983). The officer can make rational inferences from the articulable facts. *Davis v. State*, 829 S.W.2d 218, 220 (Tex. Crim.App.1992).

■ McCarver listed a number of factors that led him to stop Davis: (1) the officers were patrolling in a high-crime area; (2) the officers were patrolling after dark, during peak criminal activity hours; (3) Davis attempted to "flag down" the officers when they drove by in their unmarked car and again "flagged down" the officers after they circled the block and returned; (4) upon approaching the vehicle, Davis recognized McCarver and turned away from the car; and (5) Davis did not heed McCarver's order to stop. Conversely, Trent Hampton, who was standing in the yard with Davis when the police drove by, denied that Davis approached the officers' car. Hampton said Davis was going into the house to get a pair of shoes. Hampton also testified that he saw nothing in Davis's mouth during the time he and Davis were talking, but admitted that he went to his vehicle to get identification when the police arrived and did not see what happened on the porch. The trial court itself noted that Davis could have put the contraband in his mouth later.

■ McCarver testified that drug dealers frequently flag down and approach unfamiliar cars. *See, e.g., Sanders v. State*, 855 S.W.2d 151, 153 (Tex.App.—Houston [14th Dist.] 1993, no pet.) (finding reasonable suspicion when officer patrolling known drug area observed suspect flag down car and conduct suspicious transaction). The area and time of day increased McCarver's suspicions. Also, although flight from a show of authority alone is not sufficient to justify a temporary detention, it is a factor to consider when determining whether reasonable suspicion of criminal activity exists. *See United States v. Silva*, 957 F.2d 157, 160 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 250, 121 L.Ed.2d 182 (1992); *Salazar v. State*, 893 S.W.2d 138, 141 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd, untimely filed); *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex.App.— Houston [1st Dist.] 1994, pet. ref'd).

Taken together, the factors listed by McCarver are sufficient to create a reasonable suspicion, which justified temporarily detaining Davis in an effort to obtain further information in accordance with the federal and state constitutions and state law.

**B. Warrantless Entry On Curtilage**

Davis complains that the officers unlawfully entered the curtilage of his residence because they lacked probable cause to be on the premises. McCarver followed Davis to the front porch of the residence. Davis turned and opened his mouth to speak, revealing the cellophane baggie.

■ Davis contends that the officer's intrusion was improper and therefore taints the officer's observation of the baggie. *See Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (noting that application of plain view doctrine turns on legality of intrusion that enabled officer to perceive and seize the property). He claims that law enforcement officials are prohibited from entering a residence or the curtilage thereof for purposes of an investigatory stop because, by definition, a stop is based on less than probable cause.

It is axiomatic that a law enforcement officer has the same right as any common citizen to walk up to and knock on the front door of a residence with the honest intent of asking questions of the occupant. *See Cornealius v. State*, 900 S.W.2d 731, 734 (Tex. Crim.App.1995); *Bower v. State*, 769 S.W.2d

887, 897 (Tex.Crim.App.), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App. 1991). By analogy, an officer who attempts to detain an individual because reasonable suspicion exists that the individual is involved in criminal activity should be permitted to follow an individual to the front porch of the residence for purposes of conducting an investigative stop.

Davis was not inside his residence. He had retreated only to his front porch and was still exposed to public view. McCarver was lawfully on the premises when he saw the baggie in Davis's mouth.

## C. Warrantless Arrest

Davis contends that McCarver lacked probable cause to make a warrantless arrest for possession of a controlled substance because the incriminating nature of the baggie was not immediately apparent. After being unable to open the front door of the house, Davis turned and told the officers that it was his house. As he made this comment, McCarver, who was within ten feet of Davis and had his flashlight beam focused on Davis, saw the baggie in Davis's mouth. Davis attempted to swallow the baggie, so McCarver stepped onto the porch and grabbed Davis. A commotion broke out on the front porch because people inside the house were trying to pull Davis into the house. Arriving officers used mace to subdue Davis. During the confusion, Davis spit out the baggie and threw it into a corner of the porch.

In Texas, warrantless arrests are authorized in limited circumstances. A police officer may arrest an individual without a warrant only if the arrest falls within one of specified exceptions and there is probable cause with respect to that individual. *Stull v. State,* 772 S.W.2d 449, 451 (Tex.Crim.App. 1989). Article 14.01(b) authorizes a warrantless arrest for an offense committed in an officer's presence or within his view. TEX. CODE CRIM.PROC.ANN. art. 14.01(b) (Vernon 1977).

Probable cause for arrest exists when the facts and circumstances within the officer's knowledge at the time of the arrest and of which he has reasonably trustworthy information are sufficient to warrant a prudent person's belief that a particular individual had committed or was committing an offense. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App.1991). A valid warrantless arrest for purposes of the Fourth Amendment also requires probable cause. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, 145 (1964). The burden is on the state to prove the existence of probable cause to justify a warrantless arrest. *Stull,* 772 S.W.2d at 453.

In addition to the circumstances already discussed that gave rise to McCarver's reasonable suspicion that Davis was involved in criminal activity—including the high-crime area, Davis's behavior in flagging down the occupants of an unfamiliar car, and his subsequent uncooperative attitude—McCarver had the additional factor of the baggie to consider. McCarver testified that cocaine is commonly stored in baggies and that it is not unusual for an individual to store a baggie of cocaine in his mouth. He also testified that it is common for an individual to swallow or attempt to swallow a baggie containing a controlled substance in an effort to destroy evidence and prevent an arrest. McCarver's knowledge as a result of his training and experience as a police officer gives meaning to the baggie he observed in Davis's mouth.

Probable cause is a flexible, common-sense standard. *Brown,* 460 U.S. at 742, 103 S.Ct. at 1543. In determining whether the incriminating nature of seized evidence was immediately apparent, the evidence collected must be viewed as understood by those versed in law enforcement. *Id.* Applying this reasoning to the specific facts in *Brown,* the Supreme Court found that the officer possessed probable cause to believe that an opaque balloon in Brown's possession contained an illicit substance. The Supreme Court discounted the fact that the contents of the balloon could not be seen, finding that the distinctive container "spoke volumes as to its contents—particularly to the trained eye of the officer." *Id.* at 743, 103 S.Ct. at 1544.

In *Boyd v. State*, 621 S.W.2d 616, 617 (Tex.Crim.App. [Panel Op.] 1981), the court of criminal appeals held that an officer's observation of money being exchanged for tinfoil packets, coupled with the officer's knowledge that heroin is normally packaged in tinfoil, was sufficient to provide probable cause that an offense had been committed. And in *Arnold v. State*, 831 S.W.2d 556, 559 (Tex.App.—Austin 1992, pet. ref'd), the court of appeals held that the arresting officer had probable cause to believe a matchbox contained contraband when the officer testified that matchboxes are commonly used to carry contraband and that he had observed the suspect trying to hide or dispose of the matchbox after seeing the officer.

Under the totality of the circumstances, probable cause existed to justify a reasonable person's belief that Davis was in possession of a controlled substance at the time of his arrest. The drug evidence was not seized pursuant to an unlawful warrantless arrest. The trial court did not abuse its discretion in denying the motion to suppress the drug evidence and admitting that evidence at trial.

## CHARGING ERROR

■ Davis contends that the trial court erroneously charged the jury under Article 38.23(a) of the Code of Criminal Procedure, which reads:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1995).

When a fact issue is raised concerning an officer's reasonable suspicion or the existence of probable cause, the defendant has a statu-

tory right to have the jury charged on the issue. *See Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App.1986). The State concedes that there is some evidence in the record to raise a fact issue about the legality of Davis's detention and subsequent arrest; thus, an instruction pursuant to Article 38.23 was mandated. *See id.* The charge includes the following instruction:

> You are further instructed that if you believe, or have a reasonable doubt that evidence was obtain (sic) by any law enforcement officer in violation of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, then in such event the jury shall disregard any such evidence so obtained.

Although the State urges that this instruction is adequate, Davis contends that it is incomplete because it lacks the appropriate application paragraphs that would have instructed the jury on the correct mandatory application of the facts to the law of reasonable suspicion for purposes of an investigative detention and the law of probable cause for warrantless entry and warrantless arrest.

■ The trial court is to provide the jury with both abstract statements of the applicable law and must also apply the law to the evidence in the case. *Riley v. State*, 830 S.W.2d 584, 586–87 (Tex.Crim.App.1992). This requirement applies to defensive issues as well as the law of the offense. *See Beggs v. State*, 597 S.W.2d 375, 379–80 (Tex.Crim. App. [Panel Op.] 1980).

■ In the present case, the instruction given consists only of an abstract proposition of law drawn directly from article 38.23. The charge does not instruct the jury on the law governing reasonable suspicion or probable cause. The charge does not apply these legal concepts to the evidence presented, nor does it ask the jury to resolve the disputed fact issues that either justify or invalidate the officers' conduct. *Id.* The charge is defective.

■ A finding of error does not end, but rather begins this court's inquiry. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex.Crim.App.

1985) (opinion on reh'g). The trial court, on its own motion, inserted the instruction tracking article 38.23; defense counsel did not request the instruction. The statement of facts shows that defense counsel objected to the jury charge because "[u]nder *Alonzo (sic) v. the State,* I do not think that it reflects the proper charge to the jury." This objection does not apprise the trial court of any specific defect in the charge and is too general to preserve error. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp. 1995), art. 36.15 (Vernon Supp.1995); TEX. R.APP.P. 52(a); *Turner v. State,* 726 S.W.2d 140, 141 (Tex.Crim.App.1987).

 When a charging error is unpreserved for purposes of appeal, the accused will obtain a reversal only if the error is so egregious that he was deprived of a fair and impartial trial. *Almanza,* 686 S.W.2d at 171. We assay the actual degree of harm in light of the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* Davis has no complaints about the remainder of the jury charge, which correctly charges the jury on the elements of the offense of possession of a controlled substance and instructs the jury to disregard evidence that was obtained unlawfully. There was conflicting evidence of Davis's behavior and the police officers' actions on the night of the arrest. The evidence contradicting the State's version of the events that night was emphasized in defense counsel's closing argument, and counsel for both parties discussed the propriety of the officers' conduct during closing arguments. The prosecutor's closing argument also touches on the law regarding justification for an investigative detention. Based on the entire charge, the evidence, and the arguments of counsel, the error has not caused Davis egregious harm; therefore, no reversible error has been shown.

### PUNISHMENT

Davis asserts that the ninety-nine-year sentence assessed by the jury is grossly disproportionate to the offense committed, in violation of his constitutional rights under the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Texas Constitution. Although Davis raises both federal and state constitutional claims, he cites no authority that would require this court to analyze the two claims differently; therefore, his claims will be addressed together. *See Heitman,* 815 S.W.2d 681.

 The legislature is vested with the power to define crimes and prescribe penalties. *See State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 104 (Tex.Crim.App.1973). Davis concedes that his punishment falls within the range prescribed by the legislature, and the court of criminal appeals has repeatedly found that punishment falling within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State,* 656 S.W.2d 481, 486 (Tex.Crim. App.1983); *Jordan v. State,* 495 S.W.2d 949, 952 (Tex.Crim.App.1973); *Samuel v. State,* 477 S.W.2d 611 (Tex.Crim.App.1972).

Davis asks this court to perform the three-part test set out in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.; see also Francis v. State,* 877 S.W.2d 441, 444 (Tex.App.—Austin 1994, pet. filed) (assuming Texas Constitution requires proportionality and applying *Solem* test).

It is questionable whether this test is still viable since the Supreme Court rendered its opinion in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Both the Fifth Circuit and the Dallas Court of Appeals have noted that, in *Harmelin,* five members of the Supreme Court rejected application of the three-factor test, although seven of the justices support an Eighth Amendment prohibition against grossly disproportionate sentences. *See McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992); *Lackey v. State,* 881 S.W.2d 418, 421 (Tex.App.—Dallas 1994, pet. ref'd).

Even assuming the test is still viable, however, there is no evidence in the appellate record before this court of the sentences imposed on criminals in Texas or other jurisdictions who committed a similar offense. Moreover, in evaluating the gravity of the offense and harshness of the penalty, Davis does not take into consideration that the jury found he had a 1990 conviction for delivery of a controlled substance and a 1990 conviction for possession of a controlled substance. The punishment assessed falls within the permissible range, and when viewed in light of Davis's criminal history, is not grossly disproportionate to the offense he committed.

Davis also contends that the punishment assessed violates section 311.031(b) of the Texas Government Code. *See* Tex.Gov't Code Ann. § 311.031(b) (Vernon 1988). Davis was arrested on January 22, 1993. At that time, possession of cocaine was classified as a felony of the second degree. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2936, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex.Gen.Laws 3586, 3706. Effective September 1, 1994, however, the Texas Legislature amended the Health and Safety Code and reduced the offense of possession of cocaine in an amount of one gram or more, but less than four grams, to a third degree felony. *See* Tex.Health & Safety Code Ann. § 481.115 (Vernon Supp.1995).

Davis relies on section 311.031(b) of the Texas Government Code, which provides:

> If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

Tex.Gov't Code Ann. § 311.031(b). Davis was not tried, convicted, or sentenced until October 1994 and argues that he therefore falls within the revised provisions of the Health and Safety Code.

Davis fails to note that the same Senate bill that amended the Health and Safety Code specifically provides:

(a) The change in law made by this article applies only to an offense committed on or after the effective date of this article. For purposes of this section, an offense is committed before the effective date of this article if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this article is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

Act of May 29, 1993, 73rd Leg., ch. 900, § 2.08, 1993 Tex.Gen.Laws 3714. Section 2.08 of the bill is a specific saving provision. Section 311.031(b) of the Texas Government Code is a general saving provision. Therefore, section 2.08 prevails over the Government Code. *See Ex parte Mangrum,* 564 S.W.2d 751 (Tex.Crim.App. [Panel Op.] 1978).

The trial court did not err in charging the jury on the permissible range of punishment under the law in effect at the time Davis committed the offense.

We affirm the trial court's judgment.