James SIMMONS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–95–00273–CR.

Court of Appeals of Texas,
Tyler.

Nov. 27, 1996.

Discretionary Review Refused
April 2, 1997.

Mark W. Hall, Chandler, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and
HADDEN, JJ.

HADDEN, Justice.

Appellant, James Simmons, appeals his conviction for the offense of delivery of cocaine in an amount less than 28 grams. A jury found Appellant guilty of the offense, and the court assessed his punishment at fifty years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $5,000. Appellant raises two points of error on appeal. We will af-firm.

In his first point of error, Appellant contends that the cocaine evidence was improperly admitted because the State did not establish a proper chain of custody. He claims that chain of custody is incomplete because the sheriff's deputies did not actually examine and identify the rocks of cocaine contained in State's Exhibit No. 2. We disagree.

The record reflects that Bethany Rusnell ("Rusnell"), an undercover narcotics investigator for the Smith County Sheriff's Department, purchased four rocks of cocaine from Appellant in an undercover buy. She took the rocks back to her office, and placed them in an evidence envelope to be sent to the Department of Public Safety for analysis. She then sealed the envelope, initialled it and placed it in the evidence locker of the sheriff's office. She had no further contact with the evidence after placing it in the locker until the date of trial. At trial, she identified State's Exhibit No. 1 as the same evidence envelope.

The small plastic baggy inside the envelope containing the four rocks of cocaine was marked as State's Exhibit No. 2. Rusnell stated that she recognized the exhibit because it contained her signature, Appellant's name and the case number (No. 94–25204). The prosecutor noted that the rocks were wrapped in a small piece of paper, and asked if Rusnell placed them there. She replied, "Yes, I believe I did." When asked if she sealed it, she stated, "I may have—I don't remember. Sometimes I did sometimes I didn't. This may have been—I don't remember." However, she confirmed that the contents of the piece of paper in State's Exhibit No. 2 was the substance that she purchased from Appellant. Deputy Sheriff Frank

Blake ("Blake") testified that he took the sealed evidence envelope, State's Exhibit No. 1, from the evidence locker on May 31, 1994. He logged it into his evidence book and transported it to the laboratory for analysis. Blake confirmed that Rusnell's name and the case number (No. 94–25204) appeared on the front of the envelope. After the contents of envelope were tested, Blake picked up the envelope from the laboratory and returned it to the evidence locker.

Juan Ortiz ("Ortiz"), supervisor of the Texas Department of Public Safety Crime Lab, testified that he examined the contents of State's Exhibit Nos. 1 and 2. He tested the rock-like articles contained in State's Exhibit No. 2, and concluded that they contained cocaine. He then rewrapped the rocks and returned them to their containers. Both State's Exhibit Nos. 1 and 2 were admitted into evidence over Appellant's objection.

■ Courts have repeatedly held that a chain of custody is conclusively proven if an officer is able to identify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room and then retrieved the item for trial. *Stoker v. State,* 788 S.W.2d 1, 10 (Tex.Cr.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Alvarez v. State,* 857 S.W.2d 143, 147 (Tex.App.—Corpus Christi 1993, pet. ref'd). Absent evidence of tampering, an objection that the State has failed to establish a proper chain of custody goes to the weight of the evidence rather than to its admissibility. *Murray v. State,* 864 S.W.2d 111, 116 (Tex.App.-Texarkana 1993, pet. ref'd).

■ The Rules of Evidence do not specifically address the chain of custody issue. However, they provide that the authentication or identification as a condition precedent to admissibility is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims. TEX.R.CRIM.EVID. 901(a). *See also Cuba v. State,* 905 S.W.2d 729, 735 (Tex.App.—Texarkana 1995, no pet.). Thus, in instances in which proof of chain of custody is necessary, the State must adduce such proof to establish

that the evidence is what the State says it is. *Cuba,* 905 S.W.2d at 735.

■ In the present case, the State has established the identity of the cocaine through evidence of its proper chain of custody. Rusnell testified that she seized the rocks from Appellant and placed them in an evidence envelope. She then put an identification mark on the envelope and placed it in the property room. She identified the envelope at trial, along with its corresponding marks of identification. Blake confirmed that he took the envelope from the locker, and transported it to and from the laboratory. He also identified the envelope from the markings made by Rusnell. Ortiz stated that he tested the contents of the envelope, and concluded that it contained cocaine. Thus, the evidence established that the cocaine was what the State claimed that it was, which was the contraband seized from Appellant. *See Cuba,* 905 S.W.2d at 735.

Appellant has offered no evidence of tampering or commingling which might affect the admissibility of the evidence. His only complaints were that Rusnell and Blake did not actually identify the rocks, and that Rusnell was unsure about placing the rocks in the paper contained in State's Exhibit No. 2. However, the record reflects that Rusnell identified State's Exhibit Nos. 1 and 2, and confirmed that the rocks wrapped in the piece of paper inside State's Exhibit No. 2 were the rocks that she purchased from Appellant. The fact that she hesitated in her testimony about the paper does not affect the admissibility of the evidence. *E.g., Irvine v. State,* 857 S.W.2d 920, 925 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (care and custody discrepancies regarding the number of baggies and the identity of the officer submitting the baggies only affected the weight of the evidence, and not its admissibility). Blake did not identify the contents of State's Exhibit No. 2 because he had not personally examined its contents. He had only seen the sealed envelope introduced as State's Exhibit No. 1, which he properly identified at trial. Rusnell's testimony identifying the exhibits, combined with Blake's testimony regarding the transport of the envelope and Ortiz' testimony about the lab tests, was sufficient to establish the chain of custody. Therefore, the trial court did not abuse its discretion in overruling Appellant's objections to the admission of the cocaine. *Point one is overruled.*

In point two, Appellant raises several challenges to the punishment assessed against him. He first argues that his fifty-year sentence is improper since he should have been convicted and sentenced under the provisions of the newly amended Health and Safety Code, which reclassified the offense of delivery of a controlled substance as a state jail felony, rather than under the provisions in effect at the time of the commission of the offense, which categorized the offense as a first degree felony. He asserts that the "saving provisions" clause of the Code Construction Act, TEX. GOV'T CODE ANN. § 311.031 (Vernon 1988), mandates that his sentence be determined in accordance with the revised version of the statute because his trial occurred after the effective date of the amendments.

The delivery offense for which Appellant was tried and convicted occurred on May 26, 1994. At that time, delivery of a controlled substance in an amount less than 28 grams was classified as a first degree felony. Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2935, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex. Gen. Laws 3586, 3705 (current version at TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp.1996)). The range of punishment for a first degree felony under that section was confinement for life or for 5 to 99 years, and a fine not to exceed $20,000. Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2933, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.07, 1993 Tex. Gen. Laws 3586, 3714. However, effective September 1, 1994, delivery of a controlled substance in an amount less than one gram was classified as a state jail felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp.1996). A state jail felony is punishable by 180 days to 2 years' confinement, and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.35 (Vernon 1994). Appellant was not tried and convicted until September 1995.

He claims that he should have been sentenced as if he had been convicted of the reclassified state jail felony since his trial occurred after the effective date of the statute effecting the reclassification.

Appellant's argument is premised on the application of the "general savings provision" of the Code Construction Act, which is codified in Section 311.031(b) of the Texas Government Code. Section 311.031(b) provides:

If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

TEX. GOV'T CODE ANN. § 311.031(b) (Vernon 1988). Appellant claims that the general savings provision is superior to the more specific enabling legislation which accompanies the newly amended Health and Safety Code provisions. The enabling legislation following the Health and Safety Code amendments provides:

(a) The change in law made by this article applies only to an offense committed on or after the effective date of this article. For purposes of this section, an offense is committed before the effective date of this article if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this article is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.08, 1993 Tex. Sess. Law Serv. 3589, 3717 (Vernon). This same enabling language was included at the conclusion of the Penal Code amendments. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.18, 1993 Tex. Sess. Law Serv. 3589, 3708 (Vernon).

The Court of Criminal Appeals has previously resolved conflicts between section 311.031(b) of the Texas Government Code and the specific enabling legislation regarding changed penalty ranges, and has held that the specific enabling legislation supersedes Section 311.031(b). *See Ex parte Mangrum*, 564 S.W.2d 751, 755 (Tex.Cr.App. 1978). More recently, the Dallas and Texarkana courts of appeals have addressed the issue of whether the specific enabling legislation accompanying the amendments to the Health and Safety Code and the Penal Code supersede the general savings clause in Section 311.031(b) of the Government Code, and have concluded, pursuant to *Mangrum,* that the specific enabling legislation controls. *State v. Lewis,* 918 S.W.2d 557, 559 (Tex. App.—Dallas 1996, no pet.) (Health and Safety Code legislation); *Fiori v. State,* 918 S.W.2d 532, 533 (Tex.App.—Dallas 1995, no pet.) (Penal Code legislation); *Davis v. State,* 905 S.W.2d 655, 665 (Tex.App.—Texarkana 1995, pet. ref'd) (Health and Safety Code legislation). By including the "saving provisions" clauses at the conclusion of articles one and two of the Senate Bill, the legislature expressed its clear intention that the "old law" would remain in effect to govern the disposition of cases involving offenses committed prior to September 1, 1994, the effective date of the amended statutes.

■ Following the Court of Criminal Appeals' ruling in *Mangrum* and its progeny, we hold that Section 311.031(b) of the Government Code does not apply to the relevant amendments to the Health and Safety Code. Instead, the specific savings provisions in Section 2.08 of the enabling legislation control. It is undisputed that the offense occurred on May 26, 1994, which was more than three months before the amended versions of the pertinent code provisions came into effect. Thus, pursuant to Section 2.08, the trial court properly applied the prior Health and Safety Code provisions in convicting and sentencing Appellant.

Appellant also asserts that the sentence assessed by the judge is grossly disproportionate to the offense committed, and violates his constitutional rights under the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment. He further argues that the sentence violates his rights under the Texas Constitution. Although Davis raises both federal and state constitutional claims, he cites no authority that would require this Court to analyze the claims differently. Therefore, his claims will be addressed to-

gether. *See Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App.1991); *Davis,* 905 S.W.2d at 664.

"The legislature is vested with the power to define crimes and prescribe penalties." *Davis,* 905 S.W.2d at 664; *citing State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 104 (Tex.Cr.App.1973). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State,* 656 S.W.2d 481, 486 (Tex.Cr.App.1983); *Jordan v. State,* 495 S.W.2d 949, 952 (Tex.Cr. App.1973); *Davis,* 905 S.W.2d at 664. As we have previously determined, Appellant's punishment falls within the applicable range prescribed by the legislature. Therefore, it would not be prohibited as cruel or unusual.

Appellant urges the Court to perform the three-part test set out in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem,* 463 U.S. at 292, 103 S.Ct. at 3011. However, the strict application of the *Solem* test has been questioned since the Supreme Court rendered its opinion in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The Texarkana court of appeals recently discussed the applicability of *Solem* in *Davis, supra,* and observed that five members of the Supreme Court in *Harmelin* rejected application of the three-factor test. *Davis,* 905 S.W.2d at 664. However, the Texarkana court nevertheless evaluated the sentence under the elements of *Solem,* recognizing that seven of the justices in *Harmelin* still supported an Eighth Amendment prohibition against grossly disproportionate sentences. *Davis,* 905 S.W.2d at 664, *citing, McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992) and *Lackey v. State,* 881 S.W.2d 418, 421 (Tex. App.—Dallas 1994, pet. ref'd).

Even assuming that the test is still viable, the requirements of *Solem* have not been satisfied. There is no evidence in the appellate record reflecting the sentences imposed on criminals in Texas or other jurisdictions who committed a similar offense; therefore, we may not engage in a comparative evaluation. Moreover, in evaluating the gravity of the offense and harshness of the penalty, Appellant does not take into consideration the fact that he also had a 1991 conviction for possession of a controlled substance. The punishment assessed falls within the permissible range, and when viewed in light of Appellant's criminal history, is not grossly disproportionate to the offense he committed. For the foregoing reasons, point of error two is overruled.

The judgment of the trial court is **affirmed.**