

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00123-CR

_____

JOSE DE LA GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 18th District Court
Johnson County, Texas
Trial Court No. F48905

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Jose (also known as Joe) David De La Garza, charged in Johnson County, Texas,[1] with failure to comply with sex-offender registration requirements, the punishment being enhanced by previous convictions, entered a plea of guilty to the charge, and requested a trial before a jury as to the issue of punishment. After the jury returned its verdict wherein it found the enhancement paragraph to be "true," it directed that De La Garza was to be sentenced to serve twenty years' confinement and pay a $10,000.00 fine. De La Garza has raised two issues on appeal: (1) he maintains that the trial court erred by allowing the introduction of inadmissible hearsay testimony and (2) he avers that the sentence assessed to him amounted to a disproportionate sentence.

By way of background, De La Garza was tried as an adult and found guilty of a forcible rape in 1978 committed by him when he was fifteen years old. It was this conviction of a sex crime which triggered the requirement of De La Garza to continuously maintain registration in Texas. After having been released from imprisonment for that crime, De La Garza was convicted again in 1989, this time being for violation of federal drug laws, serving about sixteen years in prison for that offense.

Persons convicted of certain sex-related offenses are required pursuant to Chapter 62 of the Texas Code of Criminal Procedure to register at least annually with certain offices in each county, providing those offices with certain data (such as residence address and places of employment).

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

TEX. CODE CRIM. PROC. ANN. arts. 62.001–.408 (West 2006 & Supp. 2015). The registration requirement is triggered more often than annually if the information provided has changed. Article 62.102(a) of the Texas Code of Criminal Procedure is the statute within that chapter that criminalizes the failure of a person convicted of a sex-related offense to comply with any of the registration requirements set out in the chapter. TEX. CODE CRIM. PROC. ANN. art. 62.102(a). It is not contested that De La Garza had a duty to register as a person convicted of a sex-related offense and that he failed to do so at the time alleged in his indictment.

De La Garza first registered as a convicted sex crime offender with the Cleburne, Texas Police Department (the CPD) in 2004. For a number of years, De La Garza reported to the CPD that he was residing in Cleburne but was unemployed. In 2014, Corporal Bryan Proctor, an officer with the CPD, noticed that De La Garza had failed to satisfy his required annual registration for two years. Initially, upon being confronted by Proctor, De La Garza indicated that he had not registered with the CPD because he had been living and working "down south." Proctor told the jury that if De La Garza had moved or obtained employment, he had the duty to inform both the CPD and any agency with whom he would have had the responsibility to register in the other sites where De La Garza maintained that he had been working and living. At this point in the examination of Proctor, the following exchange occurred.

> Q.    So -- now when he's -- when he moves to south Texas, what exactly is he supposed to do?
>
> A.    When an offender moves, he's required, first of all, to check out with the registering office which would be me. He's required to tell me, hey, I'm moving to this address, to this location, to this jurisdiction. I'm then required to fill out paperwork, have him sign the paperwork and then he had to take that paperwork to the registering office that he's moving to within seven days. I'm also required at

3

that point to notify them by either fax, e-mail or anyway [sic] I can get those documents to them, that this particular sex offender is moving into that particular area. He then has seven days to check in with that registering authority that he's moving to to verify his information and to make sure everything is good to go there.

Q. So he needs to tell them in south Texas and y'all in Cleburne; is that right?

A. Correct.

Q. Any indication that he had told the authorities in south Texas?

[Counsel for De La Garza]: I'm going to object, Judge, unless he has direct evidence and he can say that he spoke with someone.

THE COURT: Do you have that knowledge, "yes" or "no"?

THE WITNESS: I do.

THE COURT: How did you gain that knowledge?

[Proctor]: Through the secured DPS database website.

THE COURT: I'm going to allow it.

Q. [By the State] Any indication that he had told whoever -- wherever he was at in south Texas?

A. He never told anybody in south Texas. He never registered with anybody.

It is the above exchange upon which De La Garza's first point of error is based. In other words, he now complains that when Proctor was allowed to testify concerning the indication that De La Garza made no report to authorities as required of people convicted of sex offenses, this was a violation of the hearsay rule.

It is cogent here that the objection lodged by De La Garza could have been construed in more than one fashion. As to the first part of the objection ("unless he has direct evidence"), it

could be that De La Garza believed that Proctor would have needed to make a personal observation of De La Garza's failure. The second part of the sentence ("he can say he spoke with someone") appears to beg for the introduction of hearsay from unidentified sources. In short, the nature of the objection is quite unclear.

It is elemental that as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1. "The objection must merely be sufficiently clear to provide the trial judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). The Texas Court of Criminal Appeals has unequivocally directed that where an issue has not been properly preserved for appeal, neither a court of appeals nor the Court of Criminal Appeals should address the merits of that issue. *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). Here, we need not further parse the question or response to determine if there was actually hearsay involved, and we will not venture into the "Serbonian bog" of advisory opinions. Since there was no understandable objection voiced, had there been any error, it was not preserved. De La Garza's first point of error is denied.

De La Garza's other point on appeal complains that his twenty-year sentence—which is the maximum permissible sentence—is disproportionately harsh for the crime of failing to register as a person convicted of a sex-related offense (De La Garza's fine of the maximum $10,000.00 is not mentioned in his brief.).

5

The United States Supreme Court visited the issue of the proportionality of sentences at length in *Solem v. Helm*, 463 U.S. 277, 290 (1983), laying down a three-part test of objective criteria: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292. That test was somewhat modified in *Harmelin v. Michigan*, 501 U.S. 957 (1991). The United States Fifth Circuit adopted the modified *Solem* test in *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). Under the *McGruder* analysis, the initial inquiry is a comparison of the gravity of the offense weighed against the severity of the punishment received. *Id.* If a reviewing court does not find that the sentence is grossly disproportionate to the offense, there is no need to attempt to apply the final two prongs of the *Solem* test. *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

"The legislature is vested with the power to define crimes and prescribe penalties." *Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd). "Texas courts have traditionally held that, as long as the punishment assessed is within the range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual." *Williamson v. State*, 175 S.W.3d 522, 524 (Tex. App.—Texarkana 2005, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973)). "Any punishment assessed within the range that is authorized by statute is not cruel and unusual punishment, and does not render the sentence excessive." *Price v. State*, 35 S.W.3d 136, 144 (Tex. App.—Waco 2000, pet. ref'd). It is undisputed that De La Garza's enhanced sentence is within the statutorily allowable range of punishment. In this circumstance, the jury heard evidence of De La Garza's conviction of forcible

rape and his conviction on drug charges, both of these precipitating lengthy prison stays by De La Garza. Atop those convictions, the jury also heard that even though De La Garza had committed the offense for which he was on trial, there were multiple offenses under the failure to register requirements with which he had not been charged. In addition, it was developed that the last time that De La Garza had reported to the CPD, the residence he reported was within a "safe zone" for children (one designed to be free of sexual offenders who had a responsibility to register) and that he would have to move; there is no evidence that he did move, only evidence that he made no more reports to the authorities. The jury could have assumed that De La Garza simply did not care that there were rules that applied to him and that he opted to disregard them if they interfered with his way of life. The jury could also well have concluded that De La Garza was nothing less than a scofflaw and that a more lenient sentence than the maximum allowable would have little or no impact on him.

De La Garza has failed to show that the sentence meted to him by the jury was disproportionate to the crime that he committed.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted: February 29, 2016
Date Decided: April 12, 2016

Do Not Publish

7