# NO. 12-22-00133-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DEIVEON DAMOND WARREN,* *APPELLANT* | *§* | *APPEAL FROM THE 114TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Deiveon Damond Warren appeals his conviction for aggravated robbery. In his sole issue, he contends that his sentence constitutes cruel and unusual punishment. We affirm.

## BACKGROUND

Following their successful flight from a purse-snatching robbery against an elderly woman at Walmart, Appellant, Zadaviyon Carter, Brittney Dunn, and a juvenile referred to as "B.J." drove around Tyler, Texas. When they saw an elderly woman tending to her garden, they pulled into the church parking lot next door.

For the approximately next fifteen minutes, the group watched for signs of trouble. Carter eventually approached the elderly woman with a realistic replica of an "AR-style" rifle. He pointed the gun at her and screamed, "Give me your money!" and demanded her keys. The victim screamed, and then B.J. appeared from around the corner. B.J. shoved her to the ground and tried to enter the house, but found the front door locked. The group was unsuccessful in taking any property from the victim.

At that point, Carter and B.J. returned to the car, where Appellant served as the getaway driver. Once Carter and B.J. exited the vehicle, the robbery took less than one minute. It is undisputed that Appellant was the driver and never exited the vehicle during the robbery. The

victim sustained soreness and bruising from falling. The church's security cameras captured a video of the robbery.

Appellant was subsequently arrested and indicted for the offense of aggravated robbery. Appellant pleaded "guilty" without a plea bargain and the matter proceeded to sentencing before the court.

At the sentencing hearing, Appellant introduced 469 pages of his medical and psychological records. Dr. Patricia Plasay, a licensed psychologist at the Forensic and Clinical Psychology Center, testified at the hearing. She explained that she evaluated Appellant and reviewed his court records, legal history, the extensive medical and psychological records, school records, and interviewed Appellant's mother and former employer. Dr. Plasay concluded that Appellant had mild intellectual development disorder, which affects his impulse control and problem-solving ability. However, she admitted that Appellant could understand the difference between right and wrong, and would understand that committing a robbery was wrong. Dr. Plasay also explained that it would be easy for officers and others not to notice his disability.

Ultimately, the trial court assessed Appellant's punishment at seventy-five years of imprisonment. At the sentencing hearing, Appellant objected that his sentence violated the Eighth Amendment, was cruel and unusual, and grossly disproportionate to the crime he committed. This appeal followed.

## CRUEL AND UNUSUAL PUNISHMENT

In his sole issue, Appellant argues that the seventy-five-year sentence assessed by the trial court constitutes cruel and unusual punishment prohibited under the United States Constitution and the Texas Constitution. In his brief, Appellant also contends that his sentence is grossly disproportionate to the crime considering his alleged limited role in the robbery as the getaway driver and his intellectual disability.

Appellant preserved his complaint that his sentence is grossly disproportionate and constitutes cruel and unusual punishment when he objected at the punishment hearing at the time sentence was pronounced. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013).

The United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision was made applicable to the states by the Due Process Clause of the

Fourteenth Amendment. *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). Similarly, the Texas Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." TEX. CONST. art. 1, § 13. The difference between the Eighth Amendment's "cruel and unusual" phrasing and the Texas Constitution's "cruel or unusual" phrasing is insignificant. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664.

In this case, Appellant was convicted of aggravated robbery, a first-degree felony with a punishment range of no less than five years but no more than ninety-nine years or life imprisonment. *See* TEX. PENAL CODE ANN. § 29.03 (West 2019). Thus, the seventy-five-year sentence imposed by the trial court falls within the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

Nevertheless, Appellant urges this Court to consider the factors originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.*, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the *Solem* test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g., McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), cert. denied, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.—Texarkana 1999, no pet.). A punishment will be grossly disproportionate "only in the exceedingly rare or extreme case." *State v. Simpson*, 488

S.W.3d 318, 322-23 (Tex. Crim. App. 2016) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173, 155 L. Ed. 2d 144 (2003)).

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we begin this threshold analysis by comparing the gravity of the offense to the severity of the sentence. *Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 2022, 176 L. Ed. 2d 825 (2010); *Simpson*, 488 S.W.3d at 323; *see also Ex parte Chavez*, 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006). Assessing the gravity of the offense requires us to consider (1) the harm that the defendant caused or threatened to the victim and to society, (2) the defendant's culpability, and (3) the defendant's prior adjudicated and unadjudicated crimes. *See Simpson*, 488 S.W.3d at 323.

In support of his argument that the trial court should have considered his claims of intellectual disability, Appellant cites *Atkins v. Virginia*, in which the United States Supreme Court held that in a death penalty case, the execution of "mentally retarded" criminals is prohibited by the Eighth Amendment's prohibition against cruel and unusual punishment.[1] *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S. Ct. 2242, 2252, 153 L. Ed. 2d 335 (2002). However, we note that the Court also recognized that "[t]hose mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes." *Id.*, 536 U.S. at 306, 122 S. Ct. at 2244.

Appellant cites no authority holding that defendants suffering from mild intellectual developmental disorder who are sentenced within the applicable range for the offense leads to an inference of gross disproportionality. However, as Appellant points out, intellectual disability is a sentencing issue. *See Petetan v. State*, 622 S.W.3d 321, 334 (Tex. Crim. App. 2021). Evidence of Appellant's intellectual development disorder is relevant evidence and the trial court here admitted 469 pages of records related to Appellant's physical and mental health and history, along with Dr. Plasay's expert testimony concerning Appellant's condition. The trial court considered the evidence and weighed it. Dr. Plasay admitted that Appellant's intellectual developmental disorder was mild, he knows right from wrong, and he would know that

---

[1] "Mental retardation" is an outdated pejorative term; the modern phrase describing such a condition is intellectual disability or intellectual developmental disorder. *See Hall v. Florida*, 572 U.S. 701, 704, 134 S. Ct. 1986, 1990, 188 L. Ed. 2d 1007 (2014) (using the term "intellectual disability" instead of "mental retardation" and noting the change in terminology has been approved by and is used in the Diagnostic and Statistical Manual of Mental Disorders (DSM)).

aggravated robbery of an elderly woman was wrong.  *See **Limbrick v. State***, No. 09-09-00214-CR, 2009 WL 5449069, at \*3 (Tex. App.—Beaumont Jan. 20, 2010, no pet.) (mem. op., not designated for publication) (holding that trial court properly considered evidence of mental impairment in excessive sentence case, but properly rejected that such evidence led to inference of gross disproportionality).

Appellant's crime is severe.  It involved the use of force against an elderly woman, a segment of society that the Legislature has deemed worthy of special protection.  In fact, the statute renders the robbery against an elderly person such as the victim in this case a first-degree felony, presumably as a further deterrent to commit such crimes.  *Compare* TEX. PENAL CODE ANN. § 29.02 (West 2019) (robbery statute) *with* TEX. PENAL CODE ANN. § 29.03(a)(3)(A) (aggravated robbery of an elderly individual statute).  Moreover, the trial court heard evidence that just prior to the aggravated robbery in this case, Appellant participated in another robbery of an elderly woman at Walmart.  The trial court also heard evidence from which it could conclude that Appellant served as the orchestrator of the robbery and attempted to minimize his role by directing his codefendants to commit the actual violence while he waited in the car.

With regard to his culpability, Appellant made an open plea of "guilty."  Regarding the Walmart robbery, the State provided evidence from the video of the robbery of what appears to be Appellant directing and instructing the others involved in that robbery, which were the same individuals who committed the robbery with Appellant in this case.  The State also provided evidence that Appellant was involved in sex trafficking.  Furthermore, the evidence showed that Appellant is a member of a criminal street gang, and the State offered evidence confirming this fact such as his tattoos and testimony from a gang investigator.[2]

Finally, we are guided by the holding in ***Rummel v. Estelle*** in making the threshold determination of whether Appellant's sentences are grossly disproportionate to his crime.  445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980).  In ***Rummel***, the Supreme Court considered the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses.  *See **id.***, 445 U.S. at 266, 100 S. Ct. at 1135.  In that case, the appellant received a life sentence because he had two prior felony convictions—one for fraudulent use of a credit card to

---

[2] The trial court stated at the pronouncement of sentence that this offense alone warranted the lengthy sentence, even without considering his involvement in a street gang or the other offenses, a finding we cannot conclude amounted to an abuse of discretion, and we do not disturb it on appeal.

obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 265–66, 100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 284–85, 100 S. Ct. at 1144–45.

In this case, the offense Appellant committed—aggravated robbery—is far more serious than the combination of offenses committed by the appellant in *Rummel*, while Appellant's sentence is less severe than the life sentence upheld by the Supreme Court in *Rummel*. Thus, it is reasonable to conclude that if the sentence in *Rummel* is not unconstitutionally disproportionate, neither is Appellant's sentence in this case.

Because we have concluded that Appellant's sentence is not grossly disproportionate to the offense he committed, we need not proceed to the second and third steps of the *Solem* test to contrast his sentence to that of others for the same offense in Texas and elsewhere. *See Simpson*, 488 S.W.3d at 323. In any event, the State points out that Dunn received a fifteen-year negotiated sentence for her role in the robbery because she cooperated with the authorities and assisted in another investigation involving a sex trafficking ring, and Carter received a negotiated thirty-year sentence because he accepted responsibility for his role in the offense. *See Tobar-Gonzalez v. State*, No. 05-21-00974-CR, 2023 WL 1501586, at *3 (Tex. App.—Dallas Feb. 3, 2023, no pet. h.) (mem. op., not designated for publication) (rejecting claim that sentence was one of "rare" cases leading to grossly disproportionate inference even though defendant took responsibility "countless times" for his actions, cooperated with law enforcement, and lacked prior convictions or arrests in violent assault case); *Cahill v. State*, No. 02-22-00023-CR, 2022 WL 17172339, at *3-5 (Tex. App.—Fort Worth Nov. 23, 2022, pet. ref'd) (mem. op., not designated for publication) (holding defendant's sentence for aggravated robbery of elderly person not grossly disproportionate to crime in similar circumstances where seemingly more culpable codefendant obtained shorter sentence and victim testified how robbery negatively affected her physical and mental health). Appellant has not demonstrated a cruel or unusual punishment assessed under the circumstances.

We therefore find no violation of the Eighth Amendment, and we overrule Appellant's sole issue.

## DISPOSITION

Having *overruled* Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered May 10, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 10, 2023**

**NO. 12-22-00133-CR**

**DEIVEON DAMOND WARREN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0786-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*