Opinion filed March 12, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed March 12,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00253-CR

                                                    __________

 

                                   JAMES TAMON BATIE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 244th District Court

 

                                                           Ector
County, Texas

 

                                                 Trial
Court Cause No. C-33,074

 



 

                                              M E
M O R A N D U M   O P I N I O N

The
jury convicted James Tamon Batie of the second degree felony offense of
burglary of a habitation.  Tex. Penal
Code Ann. '
30.02(a)(1), (c)(2) (Vernon 2003).  Appellant pleaded true to two enhancement
allegations, and the jury assessed punishment at sixty years confinement.  We
affirm.

                                                     Issues
Presented








Appellant
presents three issues for review.  In his first issue, appellant asserts that
he received ineffective assistance of counsel at trial.  In his second issue,
appellant contends that the evidence was legally and factually insufficient to
support his conviction.  In his third issue, appellant contends that his
sixty-year sentence constituted cruel and unusual punishment.

                                                                    Background

The
indictment alleged that appellant, on or about March 16, 2006, Aintentionally and
knowingly, without the effective consent of Jeremy Mireles, the owner,
enter[ed] a habitation owned by Jeremy Mireles, with intent to commit the
offense of theft.@ 
The State sought to enhance appellant=s
sentence with two prior felony convictions under Section 12.42 of the Texas
Penal Code.[1]  In two
enhancement paragraphs, the State alleged that appellant had prior felony
convictions for possession of cocaine and attempted sexual assault.

The
trial court appointed an attorney to represent appellant.  Later, the trial
court entered an order permitting the attorney to withdraw as appellant=s counsel.  Appellant wrote
a letter to the trial court in which he stated that he had been diagnosed with
schizophrenia and that he had been unable Ato
consider fully, these proceedings.@ 
After appointing a second attorney to represent appellant and allowing the
attorney to withdraw based on a conflict of interest, the trial court appointed
a third attorney to represent appellant.  Because appellant=s ineffective assistance of
counsel claims are based on the conduct of his third attorney, we refer to
appellant=s third
attorney as appellant=s
counsel in the remainder of this opinion.

Appellant=s letter to the trial court
had raised an issue as to his competency to stand trial.  Appellant=s counsel filed a motion
requesting the trial court to order an independent psychiatric examination of
appellant for the purpose of determining appellant=s mental condition.  The trial court entered
an order appointing Dr. Ravi Medi, a psychiatrist, to examine appellant to
determine whether he was incompetent to stand trial.  Dr. Medi examined
appellant and concluded that he was competent to stand trial.








The
trial court held a jury trial to determine whether appellant was incompetent to
stand trial.  Dr. Medi testified at the incompetency trial.  He said that
appellant had chronic schizophrenia and that appellant took medication for his
condition.  Dr. Medi identified many symptoms of schizophrenia.  He said that
appellant did not exhibit any of the symptoms of schizophrenia during his
examination of appellant.  Dr. Medi identified a number of facts supporting his
conclusion that appellant was competent to stand trial.  Appellant=s counsel presented
appellant=s mother,
Glenda Batie, as a witness at the incompetency trial.  She testified about how
schizophrenia had affected appellant=s
life and behavior in the past.  The jury concluded that appellant was competent
to stand trial.

 The
jury found appellant guilty of the offense of burglary of a habitation. 
Appellant pleaded true to the enhancement paragraphs during the punishment
phase of the trial.  The jury assessed appellant=s
punishment at sixty years confinement, and the trial court sentenced appellant
in accordance with the jury verdict.  After the final judgment was entered, the
trial court entered an order releasing appellant=s
counsel from representing him and substituting new counsel of record for
appellant.  Appellant filed a motion for new trial.  Appellant did not raise an
ineffective assistance of counsel claim in the motion.  No hearing was
conducted on the motion, and it was apparently overruled by operation of
law.       

                                                        Sufficiency
of the Evidence 

To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v.  State, 958 S.W.2d 404, 407-08 (Tex.
Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Then, the reviewing court determines whether the evidence supporting
the verdict is so weak that the verdict is clearly wrong and manifestly unjust
or whether the verdict is against the great weight and preponderance of the
conflicting evidence.  Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).








To
establish that appellant committed burglary of a habitation, the State had to
prove that he (1) entered a habitation, (2) without the effective consent of
the owner, and (3) with intent to commit a felony or theft.  See Section
30.02(a)(1).  Appellant contends that there was no evidence that he entered
Mireles=s home. 
Appellant also contends that A[the
State] failed to provide proof of several elements of the offense beyond a
reasonable doubt.@

The
record shows that in March 2006, Mireles lived in the house located at 802
Foster Street in Odessa.  Mireles=s
wife, Debbie, and nine-year-old son, Damian, lived at the house with him. 
Debbie=s grandfather,
Jesus Cabrerra, owned the house, and Mireles and Debbie rented the house from
him.  Appellant lived across the street from Mireles.

Mireles
and his family took a trip to Dallas on March 15, 2006.  While they were gone,
Cabrerra watched the house for them.  Cabrerra testified that everything was
okay when he checked the house the evening of March 16.  However, when he
checked the house again the morning of March 17, he noticed that a screen had
been taken off one of the windows of the house.  Cabrerra went inside the house
and discovered that someone had broken into it.  He said that the house Awas a mess@ and that Aeverything was on the
floor.@  Cabrerra
called 911 for help, and he called Debbie to tell her to come back to Odessa. 
Cabrerra also called Debbie=s
father, Abel Quintella, and Quintella came to the house.

Odessa
Police Department Officer Jerry Jones testified that, on March 17, 2006, he
responded to a burglary of a habitation call at 802 Foster Street.  Officer
Jones saw a screen on the ground outside the house.  He described the house as
being Atotally
ransacked.@  Officer
Jones talked with Quintella at the scene.  He said that Quintella did not have
any direct knowledge of things that might be missing.  Officer Jones also said
that Quintella had spoken with Mireles on the phone and that Mireles had asked
Quintella to check for Aobvious
things that would be taken in a burglary,@
such as a Nintendo system or a TV.  Officer Jones testified that Quintella
determined that a Play Station and some video games were missing from the
house.  Officer Jones left a loss form at the house for Mireles to complete if
he discovered that any additional property had been taken in the robbery. 
Officer Jones did not have any further involvement in the case after he left
the house on March 17. The case was assigned to Odessa Police Department
Detective W.J. Carlisle.








Mireles
and his family returned to Odessa on March 17 after receiving the call from
Cabrerra.  Mireles testified that, at that time, the house looked like it had
been hit by a tornado.  He also testified that a number of items had been taken
from the house, including a Play Station, video games, and a BB gun that
belonged to his son.  Mireles also said that a pellet gun rifle and some
bullets were missing from the house.  Mireles listed the missing property in an
Aadditional loss
report.@  The Aadditional loss report@ was introduced into
evidence as State=s
Exhibit No. 6.

John
Urias testified that he had known Mireles for about eight or nine years, that
he and Mireles were friends, and that he lived about two blocks away from
Mireles.  Urias also testified that he knew appellant and that appellant lived
across the street from Mireles.  Appellant was known to Urias by the name ATamon.@  Urias identified
appellant in court.  On March 17, 2006, Urias was outside by his house.  Urias
testified that, at that time, he saw appellant and that appellant asked him if
he wanted to buy a Play Station.  Urias said that appellant would not tell him where
he had gotten the Play Station.  At that time, appellant did not have the Play
Station with him.  Urias testified that appellant later returned with the Play
Station.  Urias said that appellant had the Play Station in a black bag and
that there were also Play Station games, Play Station controllers, and bullets
in the bag.  Urias said that he bought the bag and its contents from appellant
for A[a]round $40.@

Mireles
testified that he told Urias about the robbery at his house and that a Play
Station, some games, and controllers were missing from the house.  Mireles said
that Urias brought the items that he had purchased from appellant to him.  At
that time, the items were in a black bag.  Mireles testified that he owned the
black bag and that it had been in his house before the burglary.  He said that,
when Urias gave him the bag, it contained the Play Station and some video games
that had been taken from his house.  Mireles testified that he gave Urias his
money back for purchasing the items. The evidence showed that the Play Station
that was taken from Mireles=s
house was a Play Station II.  Mireles identified the black bag and the
Play Station II during his testimony, and they were introduced into evidence as
State=s Exhibit Nos. 4
and 5.  Mireles testified that he did not give appellant permission to enter
his house or to take the Play Station and video games.








Detective
Carlisle testified that he met with Mireles and Urias on March 20, 2006. 
Detective Carlisle said that Mireles and Urias brought the items that had been
stolen from Mireles=s
house to him.  He also said that Mireles and Urias prepared statements.  The
statements were introduced into evidence as State=s
Exhibit Nos. 7 and 8.

Glenda
testified on behalf of appellant.  She said that appellant B James Tamon Batie B was her son.  She
testified that Mireles had threatened to kill appellant and had sprayed him
with pepper spray.  Glenda also testified that appellant had been treated for
paranoid schizophrenia since 1996 and that, if he failed to take his
medication, his behavior changed.

After
reviewing all of the evidence, we hold that the evidence is both legally and
factually sufficient to support the jury=s
verdict.  There was evidence from which the jury could have determined that
appellant (1) entered Mireles=s
habitation, (2) without the effective consent of Mireles, and (3) with intent
to commit a felony or theft.  Mireles identified the items that had been stolen
from his house.  Urias testified that he bought a number of items from
appellant.  The items that Urias purchased from appellant were among the items
that had been taken from Mireles=s
house. Based on this evidence, the jury could have reasonably concluded that
appellant stole the items from Mireles=s
house.  See Havard v. State, 972 S.W.2d 200, 203 (Tex. App.CBeaumont 1998, no pet.)
(The fact that appellant possessed stolen property on the same day that it was
taken and sold it to another party allowed the jury to infer that appellant had
entered the victim=s
house and taken the property.).  We overrule appellant=s second issue.

                                                             Assistance
of Counsel

Appellant
contends that he received ineffective assistance of counsel at the competency
trial and during the guilt/innocence and punishment phases of the trial. 
Specifically, appellant complains that his counsel failed to seek the
assistance of an expert in connection with presenting his case at the
competency trial, that his counsel failed to object to inadmissible testimony
and documents during the guilt/innocence phase, and that his counsel failed to
present defense witnesses on the issue of mitigation of punishment during the
punishment phase.








To
determine whether appellant=s
counsel rendered ineffective assistance at trial, we must first determine
whether appellant has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result of the
proceeding would have been different but for counsel=s errors.  Wiggins v. Smith, 539 U.S.
510 (2003); Strickland v. Washington, 466 U.S. 668 (1984); Andrews v.
State, 159 S.W.3d 98 (Tex. Crim. App. 2005); Thompson v. State, 9
S.W.3d 808 (Tex. Crim. App. 1999).  This standard applies to claims of
ineffective assistance of counsel in both the guilt/innocence phase and the
punishment phase of noncapital trials.  Hernandez v. State, 988 S.W.2d
770, 773 (Tex. Crim. App. 1999).  We must indulge a strong presumption that
counsel=s conduct fell
within the wide range of reasonable professional assistance, and an appellant
must overcome the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy.  Strickland, 466 U.S.
at 689; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  A[C]ounsel is strongly
presumed to have rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional judgment.@  Strickland, 466
U.S. at 690.  An allegation of ineffective assistance must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  Thompson, 9 S.W.3d at 814.  Under normal
circumstances, the record on direct appeal will not be sufficient to show that
counsel=s
representation was so deficient and so lacking as to overcome the presumption
that counsel=s conduct
was reasonable and professional.  Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  Rarely will the record on direct appeal contain
sufficient information to permit a reviewing court to fairly evaluate the
merits of such a serious allegation.  Id.  In a majority of cases, the
record on direct appeal is simply undeveloped and cannot adequately reflect the
failings of trial counsel.  Id.

In
this cause, appellant did not raise his ineffective assistance of counsel
claims in a motion for new trial; therefore, he did not present any evidence to
the trial court in support of his claims.  The record is silent as to why
appellant=s counsel
did not seek to obtain the assistance of an expert during the competency
proceedings, did not object to the complained-of evidence during the
guilt/innocence phase, and did not present witnesses on the issue of mitigation
of punishment during the punishment phase.  








Appellant=s counsel=s decisions may have been
based on sound trial strategy.  Because the record contains no evidence of the
reasoning behind trial counsel=s
actions, we cannot conclude that counsel=s
performance was deficient.  Appellant has failed to overcome the presumption
that his trial counsel=s
conduct was reasonable and professional.  Bone, 77 S.W.3d at 833; Green
v. State, 191 S.W.3d 888, 894-95 (Tex. App.CHouston
[14th Dist.] 2006, pet. ref=d)
(Because the appellant failed to present evidence rebutting the presumption
that trial counsel have plausible reasons for their actions, the court could
not conclude that trial counsel=s
performance in failing to object to testimony was deficient.).  Additionally,
the record does not demonstrate a reasonable probability that the result of the
proceeding would have been different but for appellant=s counsel=s
alleged errors.  We overrule appellant=s
first issue.

                                                                    The
Sentence

In
his third issue, appellant contends that his sixty-year sentence was grossly
disproportionate to the offense committed and that, therefore, the sentence
constituted cruel and unusual punishment in violation of the Eighth Amendment. 
U.S. Const. amend. VIII. 
Appellant did not complain about the sentence either at the time it was imposed
or in a motion for new trial.  Appellant=s
failure to raise the issue in the trial court waived any error.  Wynn v.
State, 219 S.W.3d 54, 61 (Tex. App.CHouston
[1st Dist.] 2006, no pet.); Castaneda v. State, 135 S.W.3d 719, 723
(Tex. App.CDallas 2003,
no pet.).

However,
even if appellant had preserved his complaint, he could not succeed on his
claim.  The legislature is vested with the power to define crimes and prescribe
penalties.  See State ex rel. Smith v. Blackwell, 500 S.W.2d 97, 104
(Tex. Crim. App. 1973); Simmons v. State, 944 S.W.2d 11, 15 (Tex. App.CTyler 1996, pet. ref=d); Davis v. State,
905 S.W.2d 655, 664 (Tex. App.CTexarkana
1995, pet. ref=d).  As
a general rule, punishment is not cruel and unusual if it falls within the
range of punishment established by the legislature.  Jackson v. State,
680 S.W.2d 809, 814 (Tex. Crim. App. 1984); Dale v. State, 170 S.W.3d
797, 799 (Tex. App.CFort
Worth 2005, no pet.); Rodriguez v. State, 71 S.W.3d 778, 779 (Tex.
App.CTexarkana 2002,
no pet.).  A narrow exception to this rule is recognized where the sentence is
grossly disproportionate to the offense.  Harmelin v. Michigan, 501 U.S.
957 (1991); Solem v. Helm, 463 U.S. 277, 290-91 (1983); Dale, 170
S.W.3d at 799.  A[O]utside
the context of capital punishment, successful challenges to the
proportionality of particular sentences [will be] exceedingly rare.@  Solem, 463 U.S. at
289-90 (quoting Rummel v. Estelle, 445 U.S. 263, 272 (1980)).








Solem
had suggested that, in determining the proportionality of a sentence, appellate
courts could consider three factors:  (1) the gravity of the offense compared
with the harshness of the penalty, (2) the sentences imposed for similar crimes
in the same jurisdiction, and (3) the sentences imposed for commission of the
crime in other jurisdictions.  Solem, 463 U.S. at 292.  In light of Harmelin,
the test in Solem appears to have been reformulated as an initial
threshold comparison of the gravity of the offense with the severity of the
sentence.  Then, if that initial comparison created an inference that the
sentence was grossly disproportionate to the offense, the court should consider
the other two Solem factors: (1) sentences for similar crimes in the
same jurisdiction and (2) sentences for the same crime in other
jurisdictions.  See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Mullins v. State, 208 S.W.3d 469, 470 (Tex. App.CTexarkana 2006, no pet.); Lackey
v. State, 881 S.W.2d 418, 420-21 (Tex. App.CDallas
1994, pet. ref=d).

In
this cause, appellant committed a second degree felony offense of burglary of a
habitation.  He pleaded true to two enhancement allegations, and he was
sentenced as a repeat and habitual felony offender under Section 12.42(d) of
the Penal Code.  Appellant was subject to a punishment range of twenty-five to
ninety-nine years, or life.  Appellant=s
sixty-year sentence fell within the statutory range of punishment.          

Under
Section 12.42(d), a sentence is imposed to reflect the seriousness of appellant=s most recent offense, not
as it stands alone, but in light of his prior offenses.  Rummel, 445
U.S. at 276; McGruder, 954 F.2d at 316; Winchester v. State, 246
S.W.3d 386, 390 (Tex. App.CAmarillo
2008, pet. ref=d).  A
repeat offender=s
sentence is Abased not
merely on that person=s
most recent offense but also on the propensities he has demonstrated over a
period of time during which he has been convicted of and sentenced for other
crimes.@  Rummel,
445 U.S. at 284; Hicks v. State, 15 S.W.3d 626, 632 (Tex. App.CHouston [14th Dist.] 2000,
pet. ref=d).  Thus, in
determining whether appellant=s
sentence is grossly disproportionate, we consider not only the present offense
but also his criminal history.  Winchester, 246 S.W.3d at 390.

Appellant
broke into Mireles=s
house, Atotally
ransacked@ it, and
stole a number of items from the house.  Appellant=s prior felony convictions were for possession
of cocaine in 2000 and attempted sexual assault in 2003.  Considering the
serious nature of appellant=s
offense in this cause and of his prior offenses, we conclude that his sentence
is not grossly disproportionate in violation of the Eighth Amendment.  We
overrule appellant=s
third issue.

                                                               This
Court=s Ruling

We
affirm the judgment of the trial court.

 

 

TERRY McCALL

March 12, 2009                                                                       JUSTICE


Do not publish. 
See Tex. R. App. P. 47.2(b).


Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Tex. Penal Code Ann. ' 12.42 (Vernon Supp. 2008).