**Opinion filed March 12, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00253-CR

_____

### JAMES TAMON BATIE, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-33,074**

## M E M O R A N D U M   O P I N I O N

The jury convicted James Tamon Batie of the second degree felony offense of burglary of a habitation. TEX. PENAL CODE ANN. § 30.02(a)(1), (c)(2) (Vernon 2003). Appellant pleaded true to two enhancement allegations, and the jury assessed punishment at sixty years confinement. We affirm.

### *Issues Presented*

Appellant presents three issues for review. In his first issue, appellant asserts that he received ineffective assistance of counsel at trial. In his second issue, appellant contends that the evidence

was legally and factually insufficient to support his conviction. In his third issue, appellant contends that his sixty-year sentence constituted cruel and unusual punishment.

*Background*

The indictment alleged that appellant, on or about March 16, 2006, "intentionally and knowingly, without the effective consent of Jeremy Mireles, the owner, enter[ed] a habitation owned by Jeremy Mireles, with intent to commit the offense of theft." The State sought to enhance appellant's sentence with two prior felony convictions under Section 12.42 of the Texas Penal Code.[1] In two enhancement paragraphs, the State alleged that appellant had prior felony convictions for possession of cocaine and attempted sexual assault.

The trial court appointed an attorney to represent appellant. Later, the trial court entered an order permitting the attorney to withdraw as appellant's counsel. Appellant wrote a letter to the trial court in which he stated that he had been diagnosed with schizophrenia and that he had been unable "to consider fully, these proceedings." After appointing a second attorney to represent appellant and allowing the attorney to withdraw based on a conflict of interest, the trial court appointed a third attorney to represent appellant. Because appellant's ineffective assistance of counsel claims are based on the conduct of his third attorney, we refer to appellant's third attorney as appellant's counsel in the remainder of this opinion.

Appellant's letter to the trial court had raised an issue as to his competency to stand trial. Appellant's counsel filed a motion requesting the trial court to order an independent psychiatric examination of appellant for the purpose of determining appellant's mental condition. The trial court entered an order appointing Dr. Ravi Medi, a psychiatrist, to examine appellant to determine whether he was incompetent to stand trial. Dr. Medi examined appellant and concluded that he was competent to stand trial.

The trial court held a jury trial to determine whether appellant was incompetent to stand trial. Dr. Medi testified at the incompetency trial. He said that appellant had chronic schizophrenia and that appellant took medication for his condition. Dr. Medi identified many symptoms of schizophrenia. He said that appellant did not exhibit any of the symptoms of schizophrenia during

---

[1]TEX. PENAL CODE ANN. § 12.42 (Vernon Supp. 2008).

2

his examination of appellant. Dr. Medi identified a number of facts supporting his conclusion that appellant was competent to stand trial. Appellant's counsel presented appellant's mother, Glenda Batie, as a witness at the incompetency trial. She testified about how schizophrenia had affected appellant's life and behavior in the past. The jury concluded that appellant was competent to stand trial.

The jury found appellant guilty of the offense of burglary of a habitation. Appellant pleaded true to the enhancement paragraphs during the punishment phase of the trial. The jury assessed appellant's punishment at sixty years confinement, and the trial court sentenced appellant in accordance with the jury verdict. After the final judgment was entered, the trial court entered an order releasing appellant's counsel from representing him and substituting new counsel of record for appellant. Appellant filed a motion for new trial. Appellant did not raise an ineffective assistance of counsel claim in the motion. No hearing was conducted on the motion, and it was apparently overruled by operation of law.

### Sufficiency of the Evidence

To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

To establish that appellant committed burglary of a habitation, the State had to prove that he (1) entered a habitation, (2) without the effective consent of the owner, and (3) with intent to commit a felony or theft. *See* Section 30.02(a)(1). Appellant contends that there was no evidence that he entered Mireles's home. Appellant also contends that "[the State] failed to provide proof of several elements of the offense beyond a reasonable doubt."

The record shows that in March 2006, Mireles lived in the house located at 802 Foster Street in Odessa. Mireles's wife, Debbie, and nine-year-old son, Damian, lived at the house with him. Debbie's grandfather, Jesus Cabrerra, owned the house, and Mireles and Debbie rented the house from him. Appellant lived across the street from Mireles.

Mireles and his family took a trip to Dallas on March 15, 2006. While they were gone, Cabrerra watched the house for them. Cabrerra testified that everything was okay when he checked the house the evening of March 16. However, when he checked the house again the morning of March 17, he noticed that a screen had been taken off one of the windows of the house. Cabrerra went inside the house and discovered that someone had broken into it. He said that the house "was a mess" and that "everything was on the floor." Cabrerra called 911 for help, and he called Debbie to tell her to come back to Odessa. Cabrerra also called Debbie's father, Abel Quintella, and Quintella came to the house.

Odessa Police Department Officer Jerry Jones testified that, on March 17, 2006, he responded to a burglary of a habitation call at 802 Foster Street. Officer Jones saw a screen on the ground outside the house. He described the house as being "totally ransacked." Officer Jones talked with Quintella at the scene. He said that Quintella did not have any direct knowledge of things that might be missing. Officer Jones also said that Quintella had spoken with Mireles on the phone and that Mireles had asked Quintella to check for "obvious things that would be taken in a burglary," such as a Nintendo system or a TV. Officer Jones testified that Quintella determined that a Play Station and some video games were missing from the house. Officer Jones left a loss form at the house for Mireles to complete if he discovered that any additional property had been taken in the robbery. Officer Jones did not have any further involvement in the case after he left the house on March 17. The case was assigned to Odessa Police Department Detective W.J. Carlisle.

4

Mireles and his family returned to Odessa on March 17 after receiving the call from Cabrerra. Mireles testified that, at that time, the house looked like it had been hit by a tornado. He also testified that a number of items had been taken from the house, including a Play Station, video games, and a BB gun that belonged to his son. Mireles also said that a pellet gun rifle and some bullets were missing from the house. Mireles listed the missing property in an "additional loss report." The "additional loss report" was introduced into evidence as State's Exhibit No. 6.

John Urias testified that he had known Mireles for about eight or nine years, that he and Mireles were friends, and that he lived about two blocks away from Mireles. Urias also testified that he knew appellant and that appellant lived across the street from Mireles. Appellant was known to Urias by the name "Tamon." Urias identified appellant in court. On March 17, 2006, Urias was outside by his house. Urias testified that, at that time, he saw appellant and that appellant asked him if he wanted to buy a Play Station. Urias said that appellant would not tell him where he had gotten the Play Station. At that time, appellant did not have the Play Station with him. Urias testified that appellant later returned with the Play Station. Urias said that appellant had the Play Station in a black bag and that there were also Play Station games, Play Station controllers, and bullets in the bag. Urias said that he bought the bag and its contents from appellant for "[a]round $40."

Mireles testified that he told Urias about the robbery at his house and that a Play Station, some games, and controllers were missing from the house. Mireles said that Urias brought the items that he had purchased from appellant to him. At that time, the items were in a black bag. Mireles testified that he owned the black bag and that it had been in his house before the burglary. He said that, when Urias gave him the bag, it contained the Play Station and some video games that had been taken from his house. Mireles testified that he gave Urias his money back for purchasing the items. The evidence showed that the Play Station that was taken from Mireles's house was a Play Station II. Mireles identified the black bag and the Play Station II during his testimony, and they were introduced into evidence as State's Exhibit Nos. 4 and 5. Mireles testified that he did not give appellant permission to enter his house or to take the Play Station and video games.

Detective Carlisle testified that he met with Mireles and Urias on March 20, 2006. Detective Carlisle said that Mireles and Urias brought the items that had been stolen from Mireles's house to

him. He also said that Mireles and Urias prepared statements. The statements were introduced into evidence as State's Exhibit Nos. 7 and 8.

Glenda testified on behalf of appellant. She said that appellant – James Tamon Batie – was her son. She testified that Mireles had threatened to kill appellant and had sprayed him with pepper spray. Glenda also testified that appellant had been treated for paranoid schizophrenia since 1996 and that, if he failed to take his medication, his behavior changed.

After reviewing all of the evidence, we hold that the evidence is both legally and factually sufficient to support the jury's verdict. There was evidence from which the jury could have determined that appellant (1) entered Mireles's habitation, (2) without the effective consent of Mireles, and (3) with intent to commit a felony or theft. Mireles identified the items that had been stolen from his house. Urias testified that he bought a number of items from appellant. The items that Urias purchased from appellant were among the items that had been taken from Mireles's house. Based on this evidence, the jury could have reasonably concluded that appellant stole the items from Mireles's house. *See Havard v. State*, 972 S.W.2d 200, 203 (Tex. App.—Beaumont 1998, no pet.) (The fact that appellant possessed stolen property on the same day that it was taken and sold it to another party allowed the jury to infer that appellant had entered the victim's house and taken the property.). We overrule appellant's second issue.

*Assistance of Counsel*

Appellant contends that he received ineffective assistance of counsel at the competency trial and during the guilt/innocence and punishment phases of the trial. Specifically, appellant complains that his counsel failed to seek the assistance of an expert in connection with presenting his case at the competency trial, that his counsel failed to object to inadmissible testimony and documents during the guilt/innocence phase, and that his counsel failed to present defense witnesses on the issue of mitigation of punishment during the punishment phase.

To determine whether appellant's counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland v. Washington*, 466 U.S. 668 (1984); *Andrews v. State*, 159 S.W.3d

6

98 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). This standard applies to claims of ineffective assistance of counsel in both the guilt/innocence phase and the punishment phase of noncapital trials. *Hernandez v. State*, 988 S.W.2d 770, 773 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Rarely will the record on direct appeal contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Id.* In a majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel. *Id.*

In this cause, appellant did not raise his ineffective assistance of counsel claims in a motion for new trial; therefore, he did not present any evidence to the trial court in support of his claims. The record is silent as to why appellant's counsel did not seek to obtain the assistance of an expert during the competency proceedings, did not object to the complained-of evidence during the guilt/innocence phase, and did not present witnesses on the issue of mitigation of punishment during the punishment phase.

Appellant's counsel's decisions may have been based on sound trial strategy. Because the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. Appellant has failed to overcome the presumption that his trial counsel's conduct was reasonable and professional. *Bone*, 77 S.W.3d at 833; *Green v. State*, 191 S.W.3d 888, 894-95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (Because the appellant failed to present evidence rebutting the presumption that trial counsel have plausible reasons for their actions, the court could not conclude that trial counsel's performance in failing to object to testimony was deficient.). Additionally, the record does not demonstrate a reasonable probability that the result

of the proceeding would have been different but for appellant's counsel's alleged errors. We overrule appellant's first issue.

*The Sentence*

In his third issue, appellant contends that his sixty-year sentence was grossly disproportionate to the offense committed and that, therefore, the sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. U.S. CONST. amend. VIII. Appellant did not complain about the sentence either at the time it was imposed or in a motion for new trial. Appellant's failure to raise the issue in the trial court waived any error. *Wynn v. State*, 219 S.W.3d 54, 61 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.).

However, even if appellant had preserved his complaint, he could not succeed on his claim. The legislature is vested with the power to define crimes and prescribe penalties. *See State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973); *Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd); *Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd). As a general rule, punishment is not cruel and unusual if it falls within the range of punishment established by the legislature. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.); *Rodriguez v. State*, 71 S.W.3d 778, 779 (Tex. App.—Texarkana 2002, no pet.). A narrow exception to this rule is recognized where the sentence is grossly disproportionate to the offense. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 (1983); *Dale*, 170 S.W.3d at 799. "[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289-90 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

*Solem* had suggested that, in determining the proportionality of a sentence, appellate courts could consider three factors: (1) the gravity of the offense compared with the harshness of the penalty, (2) the sentences imposed for similar crimes in the same jurisdiction, and (3) the sentences imposed for commission of the crime in other jurisdictions. *Solem*, 463 U.S. at 292. In light of *Harmelin*, the test in *Solem* appears to have been reformulated as an initial threshold comparison of the gravity of the offense with the severity of the sentence. Then, if that initial comparison created an inference that the sentence was grossly disproportionate to the offense, the court should consider

8

the other two *Solem* factors: (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992); *Mullins v. State*, 208 S.W.3d 469, 470 (Tex. App.—Texarkana 2006, no pet.); *Lackey v. State*, 881 S.W.2d 418, 420-21 (Tex. App.—Dallas 1994, pet. ref'd).

In this cause, appellant committed a second degree felony offense of burglary of a habitation. He pleaded true to two enhancement allegations, and he was sentenced as a repeat and habitual felony offender under Section 12.42(d) of the Penal Code. Appellant was subject to a punishment range of twenty-five to ninety-nine years, or life. Appellant's sixty-year sentence fell within the statutory range of punishment.

Under Section 12.42(d), a sentence is imposed to reflect the seriousness of appellant's most recent offense, not as it stands alone, but in light of his prior offenses. *Rummel*, 445 U.S. at 276; *McGruder*, 954 F.2d at 316; *Winchester v. State*, 246 S.W.3d 386, 390 (Tex. App.—Amarillo 2008, pet. ref'd). A repeat offender's sentence is "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Rummel*, 445 U.S. at 284; *Hicks v. State*, 15 S.W.3d 626, 632 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Thus, in determining whether appellant's sentence is grossly disproportionate, we consider not only the present offense but also his criminal history. *Winchester*, 246 S.W.3d at 390.

Appellant broke into Mireles's house, "totally ransacked" it, and stole a number of items from the house. Appellant's prior felony convictions were for possession of cocaine in 2000 and attempted sexual assault in 2003. Considering the serious nature of appellant's offense in this cause and of his prior offenses, we conclude that his sentence is not grossly disproportionate in violation of the Eighth Amendment. We overrule appellant's third issue.

### This Court's Ruling

We affirm the judgment of the trial court.

TERRY McCALL

March 12, 2009                                                      JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.