# NO. 12-21-00072-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSHUA TRENT THOMPSON,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Joshua Trent Thompson appeals the revocation of his community supervision. He presents four issues on appeal. We modify and affirm as modified.

## BACKGROUND

In 2014, Appellant was charged by indictment with the third-degree felony "accident causing injury," commonly called failure to stop and render aid, enhanced.[1] Pursuant to a plea agreement, Appellant pleaded "true" to the enhancement paragraph and "guilty" to the charge in the indictment. The trial court found Appellant "guilty" as charged and sentenced him to imprisonment for ten years. However, the trial court suspended Appellant's sentence and placed him on community supervision for eight years.

In February 2021, the State filed a motion to revoke Appellant's community supervision alleging that Appellant violated multiple terms and conditions thereof. The trial court conducted a hearing on the matter, at which Appellant pleaded "true" to several of the State's allegations and "not true" to two allegations. Following the hearing, the trial court found all of the allegations in the State's motion to be "true." Thereafter, the trial court revoked Appellant's community supervision and sentenced him to imprisonment for ten years. This appeal followed.

---

[1] TEX. TRANSP. CODE ANN. § 550.021 (West 2020).

In his first issue, Appellant contends the trial court abused its discretion when it failed to consider less restrictive alternatives to imprisonment.

## Standard of Review and Applicable Law

We review a trial court's order revoking community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Quisenberry v. State*, 88 S.W.3d 745, 749 (Tex. App.—Waco 2002, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993) (en banc); *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). Proof of a single violation of a sole condition of community supervision is sufficient to support a trial court's decision to revoke. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). The preponderance of the evidence standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels*, 202 S.W.3d at 763-64. The trial court abuses its discretion in revoking community supervision if, as to every ground alleged, the State fails to meet its burden of proof. *Cardona v. State*, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1984) (en banc).

In considering an appeal of this nature, we examine the evidence in the light most favorable to the trial court's findings to determine whether the evidence supports the findings. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (explaining the legal sufficiency standard for reviewing a jury's verdict); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). During a hearing on a motion to revoke supervision, the trial court is the trier of fact and determines the weight and credibility of the testimony. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *Diaz v. State*, 516 S.W.2d 154, 156 (Tex. Crim. App. 1974). When we are faced with a record supporting contradicting inferences, we presume that the fact finder resolved any conflict in favor of its findings, even if it is not explicitly stated in the record. *See Montgomery*, 369 S.W.3d at 192.

**Analysis**

Here, Appellant does not challenge the sufficiency of the evidence supporting the trial court's revocation of his community supervision. He argues only that the trial court erred in imposing a sentence of imprisonment rather than granting his request to be placed in an intermediate sanctions facility to address his drug addiction.

Once a violation of any one condition of community supervision is established, trial courts "enjoy broad discretion in deciding whether to continue, extend, modify, or revoke community supervision." *Merino v. State*, Nos. 13-19-00240-CR, 13-19-00241-CR, 2020 WL 3116351 at *3, (Tex. App.—Corpus Christi June 11, 2020, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 42A.751(d) (West Supp. 2020); *Ex parte Tarver*, 725 S.W.2d 195, 200 (Tex. Crim. App. 1986); *Smith v. State*, 587 S.W.3d 413, 419 (Tex. App.—San Antonio 2019, no pet.)). In *Merino*, the court noted that this broad discretion includes whether to place a probationer in SAFPF[2] as an additional condition of continued community supervision. *Merino*, 2020 WL 3116351, at *3 (citing TEX. CODE CRIM. PROC. ANN. art. 42A.752(a)(4) (West 2018)). Courts of appeals have consistently deferred to a trial court's discretion to revoke community supervision over the probationer's request for placement in SAFPF or a similar facility. *Merino*, 2020 WL 3116351, at *3; *Hawkins v. State*, 112 S.W.3d 340, 343-44 (Tex. App.—Corpus Christi 2003, no pet.); *Hodge v. State*, Nos. 02-10-00050-CR, 02-10-00051-CR, 2011 WL 2756540 at *2-3 (Tex. App.—Fort Worth July 14, 2011, pet. ref'd) (mem. op., not designated for publication); *Mathis v. State*, No. 04-09-00075-CR, 2009 WL 3320270 at *2 (Tex. App.—San Antonio Oct. 14, 2009, no pet.) (mem. op., not designated for publication); *Marriott v. State*, No. 07-02-00203-CR, 2003 WL 22004084, at *2, (Tex. App.—Amarillo Aug. 25, 2003, pet. ref'd) (mem. op., not designated for publication).

Despite this clear deference to the trial court's discretion, Appellant argues that there are two considerations when addressing conditions of community supervision relative to substance abuse treatment or an appropriate progression of sanctions for violations. First, he asserts, the conditions and sanctions "should be driven by individual assessment" or tailored to the circumstances of the individual before the court. Second, Appellant argues, the least restrictive intervention should be employed. He urges that the majority of his community supervision violations involve "technical violations," and that he clearly "faces challenges regarding

---

[2] SAFPF is the Texas Substance Abuse Felony Punishment Facility.

alcohol." While we do not disagree with Appellant that there is a broad array of alternatives to imprisonment in Texas, we cannot, based on the record here, agree with Appellant that the trial court abused its discretion in not utilizing one of those alternatives.

Under the terms of his community supervision, Appellant was prohibited from visiting bars, taverns, lounges, or other similar places. However, the record shows that Appellant was charged with the offense of public intoxication. The case was dismissed, but the evidence showed that Appellant committed the offense by a preponderance of the evidence. Appellant testified that he accidentally ended up at the bar "Where's Rufus?" for approximately fifteen minutes and did not drink any alcohol. This is in stark contrast to the officer's testimony and the dash cam footage. The record indicates that Appellant was initially charged for causing an accident and fleeing the scene. He drank alcohol, got into another accident, and refused to accept responsibility. During the revocation hearing, Appellant repeatedly denied alcohol and drug use. The record further indicates Appellant missed several urinalysis tests and visits with his supervision officer. Based on the record, the trial court could reasonably determine that Appellant was not a good candidate for continued community supervision or substance abuse counseling. *See Webster v. State*, No. 07-20-00248-CR, 2021 WL 1899359, at *3 (Tex. App.—Amarillo May 11, 2021, no pet.) (mem. op., not designated for publication).

As noted, revocation proceedings are "highly discretionary." *Merino*, 2020 WL 3116351, at *4, (citing *State v. Waters*, 560 S.W.3d 651, 661 (Tex. Crim. App. 2018)). Any one of Appellant's several violations would have supported the revocation of his community supervision. *Merino*, 2020 WL 3116351, at *4, (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). Consequently, it was well within the trial court's discretion to revoke Appellant's community supervision based on evidence of other violations of the conditions of his supervision irrespective of Appellant's request that he be placed in an intermediate sanctions facility. *Merino*, 2020 WL 3116351, at *4.

Appellant's first issue is overruled.

## DUE PROCESS

In his second issue, Appellant urges the trial court violated his right to due process by failing to consider the entire range of punishment.

**Standard of Review and Applicable Law**

Due process requires that a neutral and detached judicial officer consider the entire range of punishment and mitigating evidence. *See* ***Gagnon v. Scarpelli***, 411 U.S. 778, 786–87, 93 S. Ct. 1756, 1761-62, 36 L. Ed. 2d 656 (1973). "A court denies due process . . . if it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider the evidence and imposes a predetermined punishment." ***Teixeira v. State***, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (citing ***Granados v. State***, 85 S.W.3d 217 (Tex. Crim. App. 2002)). Unless there is a clear showing to the contrary, we presume that the trial court was neutral and detached and that it did not act arbitrarily. *See* ***Roman v. State***, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).[3]

**Analysis**

Appellant urges that the following comments by the trial court demonstrate that it did not consider the full range of punishment and imposed a predetermined sentence. At the sentencing hearing after Appellant pleaded guilty, the trial court asked him the following:

> Do you understand that you've got a ten-year sentence waiting on you if you fail on this probation?

And at the revocation hearing, the trial court stated:

> And I assured Mr. Thompson, on June 4th of 2014, that if he failed on doing his probation, he would get the sentence he'd asked me to approve for him, which was the ten-year sentence; and, of course, what the State has argued for here.
>
> As [Defendant] argues, I do have the discretion to do everything from nothing all the way up to imposing that sentence. I don't find that doing nothing is appropriate in this case.

The trial court then assessed punishment at ten years imprisonment.

The trial court gave the parties an opportunity to present evidence. The court admitted the State's exhibits and took judicial notice of the file, prior proceedings, and the presentence report.

---

[3] Although Appellant did not assert his complaint in the trial court, "[i]n the absence of a defendant's effective waiver, a judge has an independent duty . . . to consider the entire range of punishment in sentencing a defendant." ***Grado v. State***, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). Because there was no effective waiver by Appellant, we will consider the merits of his complaint. *See id.* at 743.

Appellant testified on his own behalf. The court granted the State's application to revoke, found that the ten-year sentence was appropriate, and sentenced Appellant accordingly.

We have reviewed the record and found no reason to conclude that the trial court promised to impose a specific sentence. Although the court told Appellant that it would not entertain negotiations in any revocation of his community supervision, it nonetheless gave him the opportunity to present evidence in favor of a punishment reduction. The trial court then expressly recognized that it could "do everything from nothing all the way up to imposing that sentence." It further stated that he did not "find that doing nothing is appropriate in this case." However, it found that the ten-year sentence to which Appellant had agreed was appropriate. As a result, Appellant's due process rights were not violated. *See Ex parte Brown*, 158 S.W.3d 449, 456-57 (Tex. Crim. App. 2005); *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983). Accordingly, we overrule Appellant's second issue.

### CRUEL AND UNUSUAL PUNISHMENT

In his third issue, Appellant argues that the ten-year sentence imposed by the trial court amounts to cruel and unusual punishment. However, as Appellant concedes in his brief, he made no timely objection to the trial court raising the issue of cruel and unusual punishment and has, therefore, failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver with regard to rights under the Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver with regard to rights under the United States Constitution); *see also* TEX. R. APP. P. 33.1; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] ... it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue."). But despite Appellant's failure to preserve error, we conclude that the sentence about which he complains does not constitute cruel and unusual punishment.

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.–Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.–Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495

S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In the case at hand, Appellant was convicted of "accident causing injury," which was enhanced to a second-degree felony, the punishment range for which is two to twenty years. *See* TEX. TRANSP. CODE ANN. § 550.021(c)(1)(B) (West 2020); TEX. PENAL CODE ANN. §§ 12.33, 12.42(a) (West 2019). Here, the sentence imposed by the trial court falls within the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se.

Nonetheless, Appellant urges the court to perform the three-part test originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the *Solem* test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.–Texarkana 1999, no pet.).

We first must determine whether Appellant's sentence is grossly disproportionate. In so doing, we are guided by the holding in *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In *Rummel*, the Supreme Court addressed the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. A life sentence was imposed because the appellant also had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 266, 100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 285, 100 S. Ct. at 1145.

In the case at hand, the offense committed by Appellant—accident causing injury—is more serious than the combination of offenses committed by the appellant in *Rummel*, while Appellant's ten-year sentence is less severe than the life sentence upheld by the Supreme Court in *Rummel*. Thus, it is reasonable to conclude that if the sentence in *Rummel* was not unconstitutionally disproportionate, then neither is the sentence assessed against Appellant. Therefore, since we do not find the threshold test to be satisfied, we need not apply the remaining elements of the *Solem* test. Appellant's third issue is overruled.

## COURT FEES

In his fourth issue, Appellant argues that the assessment of the time payment fee is both facially unconstitutional and premature. The State concedes the time payment fee was prematurely assessed and joins Appellant's request that this Court delete the time payment fee.[4] Appellant further argues that the assessment of the warrant fee is unsupported by the record. The State urges that not only is the fee justified but also that it should be increased based on the record.

### Time Payment Fee

The trial court's judgment sets forth that Appellant is obligated to pay court costs in the amount of $342.00. The bill of costs itemizes the costs imposed, which total $342.00. The bill of costs also includes a $25.00 "time payment" fee. And there is a notation below the list of currently owed fees that "[a]n additional time payment fee of $15.00 will be assessed if any part of a fine, court costs, or restitution is paid on or after the 31st day after the date the judgment assessing the fine, court costs or restitution is entered." *But see* TEX. LOC. GOV'T CODE ANN. § 133.103(c), *redesignated as* TEX. CODE CRIM. PROC. ANN. art. 102.030 (West Supp. 2020) (treasurer shall deposit ten percent of fees collected under this section in general fund of county

---

[4] The Texas Legislature passed legislation, effective January 1, 2020, that transfers Texas Local Government Code, Section 133.103 to Texas Code of Criminal Procedure, Article 102.030 and revises the statute to provide that all of the fees collected under the section are "to be used for the purpose of improving the collection of outstanding court costs, fines, reimbursement fees, or restitution or improving the efficiency of the administration of justice in the county or municipality." *See* Act of May 23, 2019, 86th Leg., R.S., S.B. 346, § 2.54, 2019 Tex. Sess. Law Serv. Ch. 1352. The changes apply only to a cost, fee, or fine assessed on a conviction for an offense committed on or after the effective date of the Act. *Id.* § 5.01. Because the offense in this case was committed before January 1, 2020, the former law applies. *See Ovalle v. State*, 592 S.W.3d 615, 617 n.1 (Tex. App.–Dallas 2020), *vacated on other grounds*, PD-0127-20, 2021 WL 1938672 (Tex. Crim. App. May 12, 2021).

or municipality for purpose of improving efficiency of administration of justice in county or municipality).

The court of criminal appeals recently held that the pendency of an appeal "stops the clock" for purposes of the time payment fee. ***Dulin v. State***, 620 S.W.3d 129, 133 (Tex. Crim. 2021). Consequently, the assessment of the time payment fee in Appellant's case is premature and should be struck in its entirety, without prejudice to its being assessed later if, more than thirty days after issuance of the appellate mandate, the defendant has failed completely to pay any fine, court costs, or restitution that he owes. ***Id***.[5] We sustain this portion of Appellant's fourth issue.

**Warrant Fee**

The bill of costs also includes a $50.00 "warrant fee." The Texas Code of Criminal Procedure requires a convicted defendant to pay certain fees to "defray the cost of services provided in the case by a peace officer." TEX. CODE CRIM. PROC. ANN. art. 102.011(a) (West Supp. 2020). Specifically, it requires a defendant to pay $5.00 for an arrest without a warrant and $50.00 for executing or processing an issued arrest warrant, capias, or capias pro fine. ***Id.*** art. 102.011(a)(1)-(2).

Appellant urges that "[b]ecause no arrest warrants or capiases appear in the record," the warrant fee is not supported by the record. As a result, he asks this Court to delete the warrant fee. However, contrary to Appellant's assertion, three capiases appear in the record. Each one was executed by either the Smith County Sheriff's Office or a Smith County Constable and returned served. We have the authority to modify a judgment to make the record speak the truth when we have the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b); ***Patterson v. State***, 525 S.W.3d 896, 898 (Tex. App.—Tyler 2017, no pet.). As a result, the judgment and corresponding bill of costs should be modified to include a warrant fee for each of the three capiases executed, an increase of $100. *See **Llorens v. State***, 520 S.W.3d 129, 144 (Tex. App.—Austin 2017, pet. ref'd). We overrule this portion of Appellant's fourth issue.

---

[5] Because the fee assessment Appellant challenges in his first issue is premature, we do not consider the constitutionality of the fee. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having sustained in part and overruled in part Appellant's fourth issue and overruled Appellant's first, second, and third issues, we ***modify*** the trial court's judgment and bill of costs by striking the time payment fee, without prejudice to it being assessed later, if more than thirty days after the issuance of our mandate, Appellant fails to completely pay any fine, court costs, or restitution he owes. We further ***modify*** the judgment and bill of costs to add a warrant fee for each of the three capiases issued. *See* TEX. R. APP. P. 43.2(b). This results in total costs of $417. We ***affirm*** the judgment ***as modified.***

**BRIAN HOYLE**
Justice

Opinion delivered November 3, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 3, 2021**

**NO. 12-21-00072-CR**

**JOSHUA TRENT THOMPSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-0185-14)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment and bill of costs of the court below be **modified** by striking the time payment fee, without prejudice to it being assessed later, if more than thirty days after the issuance of our mandate, Appellant fails to completely pay any fine, court costs, or restitution he owes; and we **modify** the judgment and bill of costs to add a warrant fee for each of the three capiases issued; resulting in total costs of $417, in all other respects the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*